IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEUTSCHE BANK NATIONAL TRUST §
COMPANY, AS TRUSTEE, IN TRUST §
FOR REGISTERED HOLDERS OF §
LONG BEACH MORTGAGE LOAN §
TRUST 2005-WL2, ASSET-BACKED §
CERTIFICATES, SERIES 2005-WL2, §
§
Plaintiff, §
§
V. §                     No. 3:23-cv-745-L-BN
§
STEVEN CREAR, SR., ET AL., §
§
Defendants. §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

This chapter in the history of litigation related to Defendant Steven Crear, Sr.

("Crear Sr.") and real property located at 1617 Gillarel Springs Lane, in Dallas, Texas

(the "Property") was initiated when Plaintiff Deutsche Bank National Trust Company

("Deutsche Bank" or "DB"), invoking the Court's diversity subject-matter jurisdiction

under 28 U.S.C. § 1332, filed suit against Crear Sr.; his son: Defendant Steven Crear,

Jr. ("Crear Jr."; collectively, the "Crears"); and Defendant First National Bank of

Texas ("FNBT"), based on Crear Sr.'s refusal to vacate the Property and subsequent

state forcible detainer proceedings, during which DB "discovered Crear Sr.

fraudulently, and without authority attempted to unilaterally rescind the foreclosure

… through a fraudulent document." Dkt. No. 17, ¶¶ 15-18.

> Given the fraudulent rescission combined with the numerous
> other proceedings involving the property and Crear Sr., Deutsche Bank
> elected to nonsuit the eviction proceeding in county court and pursue its

> remedies in this court.
>
> Deutsche Bank discovered additional fraud during the eviction proceedings. Following Crear Sr.'s fraudulent rescission of the foreclose, Crear Sr., without authority and in furtherance of his fraud and scheme to alienate Deutsche Bank from its property, conveyed the property to Crear Jr. by general warranty deed.
>
> With his fraudulent title to the property, Crear Jr., obtained a home equity loan from FNBT for $100,000.00, securing the loan with the property.

*Id.*, ¶¶ 19-21 (citations omitted); *see also id.*, ¶¶ 22-24 (allegations concerning financing statements filed by Crear Sr.); *Crear v. JPMorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 219 (N.D. Tex. 2020) (recounting earlier chapters (that is, lawsuits) related to this litigation).

United States District Judge Sam A. Lindsay referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 11.

The Court previously ruled on various pre-answer motions in this case. *See Deutsche Bank Nat'l Tr. Co. v. Crear*, No. 3:23-cv-745-L-BN, 2024 WL 4169122 (N.D. Tex. Aug. 8, 2024), *rec. accepted in part as supp. & rejected in part as moot*, 2024 WL 3950696 (N.D. Tex. Aug. 27, 2024).

And, while DB has brought claims against FNBT, and FNBT filed counterclaims, those counterclaims were dismissed with prejudice by stipulation. *See* Dkt. No. 79; *Deutsche Bank Nat'l Tr. Co. v. Crear*, No. 3:23-cv-745-L-BN, 2025 WL 935576 (N.D. Tex. Mar. 17, 2025).

Now before the Court are motions for summary judgment filed by Deutsche Bank and by the Crears, both fully briefed. *See* Dkt. Nos. 69, 71, 82-92, 94, & 95. FNBT has indicated that it does not oppose the relief that DB now seeks. *See* Dkt.

No. 81. And, for the following reasons, the Court should grant in part and deny in part DB's summary judgment motion, deny the Crears' motions for summary judgment, and enter a final judgment accordingly.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). And "[a] factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that

an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625.

"The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)); *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 355 (5th Cir. 2019) (A court must "view the evidence and draw all justifiable inferences in favor of the nonmovant. Even so, barebones, conclusory, or otherwise-unsupported assertions won't cut it; the nonmovant 'must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.'" (footnotes omitted)).

So, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as

to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be

granted." *DIRECTV, Inc. v. Minor,* 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007); *accord Wilson v. Dall. Indep. Sch. Dist.*, No. 3:18-cv-34-G-BN,

2020 WL 825819, at \*7 (N.D. Tex. Jan. 17, 2020) ("[B]eyond peradventure" means "beyond doubt." (cleaned up)), *rec. adopted*, 2020 WL 821034 (N.D. Tex. Feb. 18, 2020).

The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). And, so, "summary judgment is appropriate where the evidence would require a directed verdict." *Hernandez v. Trendy Collections, LLC*, No. 3:17-cv-2049-BN, 2018 WL 4103723, at \*13 (N.D. Tex. Aug. 29, 2018) (cleaned up).

"[T]he traditional leniency afforded to a *pro se* plaintiff does not excuse [the Crears] from [their] burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")).

And, "[a]lthough courts should advise *pro se* [parties] of procedural rules," *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Davis*, 798 F.3d at 293-94), the United States Court of Appeals for the Fifth Circuit "has held that they need not be given additional notice of the consequences of a summary judgment motion

and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules suffices," *id.* (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)); *see also Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) ("[T]here is a point at which even *pro se* litigants must become responsible for the prosecution of their own cases if their claims are to warrant the court's attention. It is not unjustifiably onerous to require *pro se* parties to respond to proper motions for summary judgment. All summary judgment nonmovants shoulder the same obligation. District courts can make appropriate allowances for *pro se* responses that may be somewhat less-artfully written than those of represented parties. This can be accomplished, however, without excusing them from the most basic requirement that they file a response.").

But the verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings meet the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

## Analysis

I. **DB has carried its burden at summary judgment to provide evidence sufficient to support jury findings as to the citizenships of the parties.**

The Court must begin with its subject matter jurisdiction – its "power to say what the law is." *United States v. Willis*, 76 F.4th 467, 479 (5th Cir. 2023); *see also Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is

always first." (citation omitted)).

Because "'[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute,'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), "subject-matter delineations must be policed by the courts on their own initiative even at the highest level," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (citations omitted).

And DB, as the party invoking the Court's diversity subject-matter jurisdiction, must, "[a]t the summary judgment stage," "provide evidence sufficient to support a jury finding of the citizenship of each" party, *Megalomedia Inc. v. Phila. Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024) (published order), as the undersigned further explained in the October 30, 2024 order discussing this requirement as framed by recent decisions of the Fifth Circuit, *see generally* Dkt. No. 66.

DB has provided evidence to show that the Crears and FNBT are citizens of Texas, where the Crears are domiciled and where FNBT is chartered as a financial institution and has its principal office. *See* Dkt. No. 64, ¶ 3; Dkt. No. 84, Ex. B; 28 U.S.C. §§ 1332(a) & 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010); *Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 714 (9th Cir. 2014) ("[I]n 1948 – when Congress adopted the current version of § 1348 – Congress knew that, outside of the bankruptcy context, state-chartered banks and other corporations were citizens of only the state by which they had been

incorporated." (cleaned up)); *SXSW v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023); *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996).

And DB, which has sued in its capacity as a trustee, has provided evidence to show that it is a citizen of California. *See* Dkt. No. 84, Ex. B; *Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 357 (5th Cir. 2017) ("[W]hen a trustee files a lawsuit in her name, her jurisdictional citizenship is the State to which she belongs – as is true of any natural person." (cleaned up)).

And, so, sufficient evidence shows that there is complete diversity of citizenship to support subject-matter jurisdiction under Section 1332.

## II. The Court should deny the Crears' motion for summary judgment and grant in part and deny in part DB's motion.

Assured that there is subject-matter jurisdiction to consider the motions for summary judgment, the next step is to frame the issues now before the Court, starting with the Crears.

In response to Judge Lindsay's order striking their answer, *see Crear*, 2024 WL 3950696, Crear Sr. and Crear Jr. each filed an answer to the operative complaint on September 19, 20224, *see* Dkt. Nos. 60 & 61.

Both answers assert a general denial and multiple affirmative defenses, including that the Property "has been paid off since 2007." *Id.*

The Crears then moved for summary judgment (twice) based on (that is, reasserting grounds raised in) each answer (and, so, presumably moving for summary judgment on their defenses). *See* Dkt. Nos. 69, 71, 86.

And, while the Crears attach multiple documents to both motions, only the

second motion is supported by potentially admissible evidence, an affidavit from Crear Sr. regarding checks that he contends support the defense that the Property is paid off. *See* Dkt. No. 86-2 at 4-5; *see also* Dkt. No. 92 (their opposition to DB's summary judgment motion not supported by evidence, admissible or otherwise).

As set out above, Rule 56 requires that factual assertions be "support[ed]" by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1).

And, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may" "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." FED. R. CIV. P. 56(e); *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) ("Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial." (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990))).

So admissible evidence is required no matter whether the Crears move for summary judgment on their affirmative defenses or oppose an adequately supported motion for summary judgment filed by DB. *See id.*; *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991) ("It has long been settled law that a [nonmovant]

must respond to an adequate motion for summary judgment with admissible evidence." (citation omitted)); *Henriquez v. City of Farmers Branch, Tex.*, No. 3:16-cv-868-M-BN, 2022 WL 3127838, at \*11 (N.D. Tex. July 8, 2022) ("[R]egardless the evidence offered to support the factual allegations of the nonmovant, those assertions must be supported by admissible evidence to defeat a motion for summary judgment, as material that is inadmissible does not establish a genuine issue of material fact if offered at trial." (cleaned up)), *rec. accepted*, 2022 WL 3104844 (N.D. Tex. Aug. 4, 2022).

And the only potentially admissible evidence that the Crears have offered to support factual assertions that could advance their own motions or defeat DB's motion turns on a claim or defense that is barred by res judicata. *See generally Crear*, 491 F. Supp. 3d 207 (concluding that Crear Sr.'s claims concerning the Property, including to rescind the foreclosure sale of the Property, were barred by res judicata because he had "filed at least three previous lawsuits involving identical parties, or parties with whom [the defendant] is in privity, that resulted in a final judgment on the merits, rendered by a court of competent jurisdiction, concerning the same claims").

"The preclusive effect of a prior federal court judgment is controlled by federal res judicata rules." *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000) (citations omitted); *accord Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir. 1990). Those rules bar

> "the litigation of claims that either have been litigated or should have
> been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*,

> 428 F.3d 559, 571 (5th Cir. 2005). In the Fifth Circuit, res judicata is appropriate if four conditions are met: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *Id.*; *see also Ellis*, 211 F.3d at 937.

*Chalmers v. City of Dall.*, No. 3:14-cv-36-N, 2014 WL 7174289, at *6 (N.D. Tex. Dec. 16, 2014) (citation modified).

As to the application of a judgment rendered by another judge in this district, the second and third conditions are easily met here. *See Crear*, 491 F. Supp. 3d at 215-16.

As to the first condition, Chase and DB and in privity with each other as Chase assigned the deed of trust to DB, as are Crear Sr. and Crear Jr., as the son is the purported successor in interest to his father. *See id.* at 215.

Considering the last condition, courts in this circuit use "a 'transactional test,'" under which "[t]he critical issue is whether the two suits are based on the 'same nucleus of operative facts.'" *Chalmers*, 2014 WL 7174289, at *6 (quoting *Test Masters*, 428 F.3d at 571); *see Test Masters*, 428 F.3d at 571 ("Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." (citation omitted)); *see also Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 522 (5th Cir. 2016) ("True res judicata bars recovery when a party seeks to relitigate the same facts even when the party argues a novel legal theory." (citing *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994))); *Alexander v. Hood for State of Miss.*, No. 3:16-cv-00202-GHD-

- 14 -

JMV, 2017 WL 3585470, at *3 (N.D. Miss. Aug. 16, 2017) ("[T]he transactional test is [ ] met ... [if] the claims could or should have been brought in the first action. From Plaintiff's factual allegations in all three cases, it is clear that Plaintiff had notice of the facts giving rise to these claims at the time of the first case and that the Section 1983 claims could have been ruled on by that Court.").

This test is met here where the Crears recycle stale assertions related to the Property, as DB explains:

> [T]he Crears raise defenses challenging an assignment of the deed of trust, argue Crear Sr. paid off his loan, the application of the February 2013 agreed judgment between the State of Texas and LPS, and challenge Deutsche Bank's 2019 foreclosure. (dkt. 60, 61 at ¶¶ 1-4.) The arguments were or could have been raised in the prior lawsuits and all are based out of the same nucleus of operative facts. Given this, res judicata bars the Crears' defenses challenging the assignment of the deed of trust, argument Crear Sr. paid off his loan, the application of the February 2013 agreed judgment between the State of Texas and LPS, and any challenge of Deutsche Bank's 2019 foreclosure.

Dkt. No. 83 at 26.

And, so, not only have the Crears failed to carry their burden to establish beyond peradventure all of the essential elements of their affirmative defenses – and has DB shown that it is entitled to summary judgment on those affirmative defenses – the Crears have not offered competent summary judgment evidence to support any opposition to DB's motion for summary judgment.

For that reason, the undersigned will next turn to DB's motion for summary judgment on its claims of trespass to try title, quiet title, and that Crear Sr. violated statutory provisions of Texas law, relying in large part on the undisputed recitation of material facts that DB sets out in its brief:

On April 26, 2005, Crear Sr. executed a deed of trust granting a lien against the property. (Michelle Simon decl. (Simon decl.) at ¶ 6, ex. A, app. [Dkt. No. 84] 003; deed of trust, ex. A-1, app. 006.) The deed of trust secured the obligation to repay a note in the original principal amount of $114,400, plus interest (deed of trust). (*Id.*)

Crear Sr. defaulted on his obligations under the note, and pursuant to the terms of the deed of trust, the property was sold at a foreclosure sale to Deutsche Bank on April 2, 2019 (foreclosure sale). (Simon decl. at ¶ 8, ex. A, app. 004; substitute trustee's deed, ex. A-2, app. 015.) At the time of the foreclosure sale, Crear Sr.'s loan was due for the December 1, 2007 payment. (Simon decl. at ¶ 9, ex. A, app. 004; March 15, 2019 mortgage statement, ex. A-3, app. 018.) On April 19, 2019, a notice to vacate and demand possession was sent to Crear Sr. and all occupants, tenants or subtenants to vacate the property. (Brown decl. at ¶ 4, ex. B, app. 023; disc reqs. at RFA 7, ex. B-1, app. 032; disc reqs. at RFA 1, ex. B-2, app. 044.) The Crears failed to vacate. (*Id.*)

Over the span of ten years, Crear Sr. filed several lawsuits and appeals in the U.S. District Court for the Northern District of Texas, Dallas state courts, and federal and state appeals courts concerning the property – he lost every case. (dkt. 17 at ¶ 11); *Deutsche Bank Nat'l Tr. Co. v. Crear*, No. 3:23-cv-745-L-BN, 2024 U.S. Dist. LEXIS 155056, at *1 (N.D. Tex. 2024). In Crear Sr.'s sixth lawsuit, he sought to rescind the foreclosure sale, challenged a 2009 assignment, claims he paid off his loan, and challenged JPMorgan Chase Bank's (JPMC) standing and interest in the deed of trust. *Crear v. Jpmorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 217 (N.D. Tex. 2020). The court held "[r]es judicata bars [Crear Sr.'s] claims in this lawsuit because Plaintiff has filed at least three previous lawsuits involving identical parties, or parties with whom Chase is in privity, that resulted in a final judgment on the merits, rendered by a court of competent jurisdiction, concerning the same claims." *Id.* In the court's judgment on September 30, 2020, Chief Judge Barbara M. G. Lynn warned Crear Sr. "if he persists in filing duplicative and vexatious lawsuits, he could be subject to sanctions, including monetary sanctions and an injunction preventing him from filing additional lawsuits relating to the Property, as defined in the Magistrate Judge's Findings, Conclusions, and Recommendation." (judgment, dkt. 31-1 at ex. 2, app. 004.)

Shortly before his sixth lawsuit was dismissed with prejudice, Crear Sr. unilaterally executed a document titled rescission of grantee and substitute trustee's sales cancellation of foreclosure sale deed on August 31, 2020 (rescission) purporting to cancel the foreclosure sale, reinstate the note and deed of trust, declare the substitute trustee's deed void, and grant and convey title back to him. (Brown decl. at ¶ 8, ex. B, app. 023; rescission document, ex. B-4, app. 060.) Crear Sr. executed the

rescission without the consent, permission, or ratification of Deutsche Bank. (disc reqs. at RFA 1, ex. B-1, app. 030.) Deutsche Bank never agreed to cancel and/or rescind the foreclosure sale and substitute trustee's deed nor did it agree to grant, sell, and/or convey the property to Crear Sr. after the foreclosure sale. (disc reqs. at RFA 2-3, ex. B-1, app. 030.) Crear Sr. made, presented, and/or used the rescission with knowledge it was a fraudulent claim against the property, he intended to give it legal effect, and intended to cause Deutsche Bank injury. (disc reqs. at RFA 19-21, ex. B-1, app. 034.)

Following the rescission, Crear Sr. executed a general warranty deed on September 3, 2020 (general warranty deed) purporting to grant, sell, and convey the property to Crear Jr. despite Crear Sr. having no right, title, or interest in the property. (Brown decl. at ¶ 9, ex. B, app. 024; disc reqs. at RFA 10, ex. B-1, app. 032; disc reqs. at RFA 7-8, ex. B-2, app. 046; general warranty deed, ex. B-5, app. 067.) Crear Sr. made, presented, and/or used the general warranty deed with knowledge it was a fraudulent claim against the property, he intended to give it legal effect, and intended to cause Deutsche Bank injury. (disc reqs. at RFA 24-26, ex. B-1, app. 035.)

On July 6, 2021, Crear Jr. obtained a home equity loan for $100,000 (home equity loan) from FNBT without owning the property. (Brown decl. at ¶ 10, ex. B, app. 024; disc reqs. at RFA 11-12, ex. B-2, app. 046-047; homestead lien contract and deed of trust, ex. B-6, app. 071.)

On January 19, 2023, Crear Sr. caused to be recorded a UCC Financing Statement (financing statement) in the Dallas County records identifying a purported $300,000,000 security interest in "silver specie" against Deutsche Bank …. (Brown decl. at ¶ 11, ex. B, app. 024; disc reqs. at RFA 13, ex. B-1, app. 033; financing statement, ex. B-7, app. 080.) No Deutsche Bank entity, including Deutsche Bank, authenticated the financing statement and/or authorized the filing of it, and did not agree to a $300,000,000 security interest in silver specie against it. (disc reqs. at RFA 14-15, ex. B-1, app. 033.) When Crear Sr. recorded or caused the financing statement to be recorded, he knew it was forged, it contained a material false statement, and/or it was groundless. (disc reqs. at RFA 16, ex. B-1, app. 033.)

Crear Sr. also recorded a UCC Financing Statement Amendment (financing statement amendment) in the Dallas County records on March 22, 2023 indicating a party information change to the secured party of record (MJDD LLC), collateral change identifying several Deutsche Bank entities, $300,000,000 in "Silver Speede," and eight Dallas County recordings on page 5 of the amendment. (Brown decl. at ¶ 12, ex. B, 023; financing statement amendment, ex. B-8, app. 084.)

Deutsche Bank filed this lawsuit on April 7, 2023 against the

Crears seeking declaratory judgment finding it is the owner of the property, for damages, fees and costs, injunctive relief, and a judgment of possession. (dkt. 1.)

On September 25, 2023, Deutsche Bank filed its first amended complaint (FAC) – removing and adding new claims against the Crears and adding FNBT as a defendant. (dkt. 17.) Deutsche Bank sues for (1) trespass to realty against the Crears, [a claim that DB now intends to dismiss, *see* Dkt. No. 83 at 15 n.4,] (2) trespass to try title against all defendants, (3) quiet title against all defendants, (4) violation of § 12.002, Tex. Civ. Prac. & Rem. Code against Crear Sr., (5) violation of § 9.5185, Tex. Civ. Prac. & Rem. Code against Crear Sr., (6) declaratory judgment against all defendants, and (7) injunctive relief against the Crears. (*Id.* at ¶¶ 25-44.)

To develop Deutsche Bank's claims against the Crears, Deutsche Bank served the Crears with written discovery requests on March 6, 2024, including requests for admission. (Brown decl. at ¶ 4, ex. B, app. 023; written discovery cover letter, ex. B-9, app. 091.) The Crears never responded to the requests. (Brown decl. at ¶ 5, ex. B, app. 023.) As a result of Crear Sr.'s failure to respond, he admitted the following facts:

- He unilaterally executed the rescission without the consent, permission, or ratification of Deutsche Bank (disc. reqs. at RFA 1, ex. B-1, app. 030),
- Deutsche Bank never agreed to cancel and/or rescind the foreclosure sale and substitute trustee's deed (*Id.* at RFA 2, ex. B-1, app. 030),
- Deutsche Bank never agreed to grant, sell, and/or convey the property to you after the foreclosure sale (*Id.* at RFA 3, ex. B-1, app. 030),
- On April 19, 2019, a notice to vacate and demand for possession was sent to him providing three days to vacate the property and he failed to vacate the property (*Id.* at RFA 7, ex. B-1, app. 032),
- When he executed the general warranty deed he had no right, title, or interest in the property (*Id.* at RFA 10, ex. B-1, app. 032),
- He recorded the financing statement or caused it to be recorded (*Id.* at RFA 13, ex. B-1, app. 033),
- No Deutsche Bank entity, including Deutsche Bank, authenticated the financing statement and/or authorized the filing of it (*Id.* at RFA 14, ex. B-1, app. 033),
- No Deutsche Bank entity, including Deutsche Bank, agreed to a $300,000,000 security interest in silver specie against it (*Id.* at RFA 15, ex. B-1, app. 033),
- When Crear Sr. recorded the financing statement or caused it to be recorded, he knew it was forged, contained a material false statement, and/or was groundless (*Id.* at RFA 16, ex. B-1, app.

033),

- He made, presented, and/or used the rescission with knowledge it was a fraudulent claim against the property (*Id.* at RFA 19, ex. B-1, app. 034),
- He intended that the rescission be given legal effect (*Id.* at RFA 20, ex. B-1, app. 034),
- He intended to cause Deutsche Bank injury (*Id.* at RFA 21, ex. B-1, app. 034),
- He made, presented, or used the general warranty deed with knowledge it was a fraudulent claim against the Property (*Id.* at RFA 24, ex. B-1, app. 035),
- He intended that the general warranty deed be given legal effect (*Id.* at RFA 25, ex. B-1, app. 035), and
- He intended to cause Deutsche Bank injury (*Id.* at RFA 26, ex. B-1, app. 035.)

As a result of Crear Jr.'s failure to respond to Deutsche Bank's written discovery, he admitted the following facts:

- On April 19, 2019, a notice to vacate and demand for possession was sent to him providing three days to vacate the property and he failed to vacate the property (disc. reqs. at RFA 1, ex. B-2, app. 044),
- The rescission failed to rescind the foreclosure sale and substitute trustee's deed (*Id.* at RFA 4, ex. B-2, app. 044),
- When Crear Sr. executed the general warranty deed he had no right, title, or interest in the property (*Id.* at RFA 7, ex. B-2, app. 046),
- The general warranty deed failed to convey to Crear Jr. any right, title, or interest in the property (*Id.* at RFA 8, ex. B-2, app. 046),
- When he executed the home equity loan he did not own the property (*Id.* at RFA 11, ex. B-2, app. 046),
- When he executed the home equity loan the owner(s) of the property did not sign the loan documents (*Id.* at RFA 12, ex. B-2, app. 047),
- The defenses of statute of limitations, laches, estoppel, and wrongful foreclosure you raised in his dismissal motion (dkt. 50) are factually unsupportable (*Id.* at RFA 15, ex. B-2, app. 047), and
- Deutsche Bank is the owner of the property and entitled to possession of the property (*Id.* at RFA 18, ex. B-2, app. 048.)

After the court struck the Crears' answer and their motions to dismiss or remand, and denied Crear Jr.'s motion to remand or dismiss (dkt. 59), on September 19, 2024, Crear Jr. filed his answer consisting of a general denial and defenses labeled (1) illegality (two defenses labeled illegality), (2) *Rooker-Feldman* Doctrine, and (3) res judicata. (dkt. 60 at ¶¶ 1-4.) On the same day, Crear Sr. filed an answer consisting

of the same general denial and defenses. (dkt. 61 ¶¶ 1-4.)

After the court denied FNBT's motion to dismiss (dkt. 59), FNBT filed its answer, nine affirmative defenses, and five counterclaims on October 17, 2024. (dkt. 64.)

On March 24, 2025, Deutsche Bank and FNBT filed a stipulation dismissing FNBT's defenses and counterclaims against Deutsche Bank with prejudice. (dkt. 79.) On March 27, 2025, the court granted the stipulation dismissing all of FNBT's counterclaims against Deutsche Bank with prejudice. (dkt. 80.)

Contemporaneous with the filing of this summary judgment motion, FNBT filed a notice of non-opposition (dkt. 81) confirming it is not opposed the relief sought by Deutsche Bank as detailed in the FAC and this summary judgment motion.

Dkt. No. 83 at 11-18 (cleaned up).

And, before turning to the claims, the undersigned first addresses the applicability at summary judgment of default admissions under Federal Rule of Civil Procedure 36.

Under [Rule] 36, "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of [Federal Rule of Civil Procedure] 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." FED. R. CIV. P. 36(a)(1). Rule 36 requests are properly directed to matters that the requesting party would otherwise need to prove. *See Am. Auto. Ass'n, Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991).

Under Rule 36(a), when a request for admission is served, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney," although "[a] shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court." FED. R. CIV. P. 36(a)(3).

*Longoria v. Cnty. of Dall., Tex.*, No. 3:14-cv-3111-L, 2016 WL 6893625, at *4 (N.D. Tex. Nov. 22, 2016).

"Rule 36 is self-executing, and, in the absence of a timely-served written and

signed answer or objection addressed to each matter, all Rule 36 requests for admission served on a party are deemed admitted by default," so, "[o]nce the 30-day period for serving written answers or objections has passed, the defaulting party's sole recourse is to move to withdraw or amend the deemed admissions under Rule 36(b)." *Id.* at \*5 (citing *In re Carney*, 258 F.3d 415, 420, 419 (5th Cir. 2001); citations omitted).

And, at summary judgment, where a party has failed to move under Rule 36(b), like here, a default admission is "conclusive as to the matters admitted." *Carney*, 258 F.3d at 420 ("Federal Rule of Civil Procedure 56(c) specifies that 'admissions[ ]' can be an appropriate basis for granting summary judgment. Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record. Instead, the proper course for a litigant that wishes to avoid the consequences of failing to timely respond to Rule 36 requests for admission is to move the court to amend or withdraw the default admissions in accordance with the standard outlined in Rule 36(b)." (citations and footnote omitted)); *accord Am. Gen. Inc. Co. v. Whitaker*, 971 F.3d 539, 540-41 (5th Cir. 2020); *see also AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, No. 3:04-cv-1344-D, 2005 WL 3148284, at \*6 (N.D. Tex. Nov. 21, 2005) (Admissions "can, of course, support summary judgment provided that, in combination with other record evidence, they enable [the plaintiff] to establish beyond peradventure, and without genuine and material dispute, that it is entitled to this

relief."); *cf. Poon-Atkins v. Sappington*, No. 21-60467, 2022 WL 102042, at \*2 (5th Cir. Jan. 10, 2022) (per curiam) ("We have applied rule 36(b) equally and consistently to represented and pro se parties alike, and we have refused to overlook a party's disregard for deadlines regardless of that party's status." (citations omitted)).

### A. The Court should grant DB summary judgment on its title claims.

DB first moves for summary judgment on its claims for trespass to try title and quite title, asserted against all defendants.

"A suit to quiet title and a trespass to try title action are two distinct causes of action under Texas law." *Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 816 (N.D. Tex. 2012) (citation omitted).

"By statute, a trespass-to-try-title action 'is the method of determining title to lands.'" *Brumley v. McDuff*, 616 S.W.3d 826, 831-32 (Tex. 2021) (quoting TEX. PROP. CODE § 22.001(a)). Such an action "is the exclusive remedy for resolving overarching claims to legal title" and "'embraces all character of litigation that affects the title to real estate.'" *Id.* at 832 (footnotes omitted). And

> a plaintiff may prove legal title by establishing: (1) a regular chain of title of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out of a common source; (3) title by limitations (i.e., adverse possession); or (4) possession that has not been abandoned.

*Id.* (footnotes omitted).

DB "seeks to prove title under the second option: superior title to that of the defendant[s] out of a common source." *Raggio-2204 Jesse Owens, LLC v. Hattaway*, No. 1:19-CV-00697-ADA, 2025 WL 2946610, at \*4 (W.D. Tex. July 11, 2025); *see, e.g.*,

Dkt. No. 28 at 22-23.

> By this means, a plaintiff may prove a prima facie case by connecting its title to the defendant's title through complete chains of title to a common source and then showing that its title is superior to the defendant's title. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994). If the plaintiff proves a prima facie case, "the burden of proof shifts to the defendant to show a superior title under the common source, or to show that he holds under a superior title not connected with the common source, or to show that the true title is outstanding." *Davis v. Gale*, 330 S.W.2d 610, 612 (Tex. 1960).

*Raggio*, 2025 WL 2946610, at *4.

> Under this approach, DB
>
> claims title to the property from a common source through its valid April 2, 2019 foreclosure sale. Any challenge by the Crears to Deutsche Bank's April 2, 2019 foreclosure sale is barred by the statute of limitations and res judicata. The recission fraudulently and unilaterally signed and recorded by Crear Sr. is void as a matter of law and failed to rescind the foreclosure and convey title back to Crear Sr. When Crear Sr. tried to convey the property, he did not have title to convey to Crear Jr. Crear Jr.'s home equity loan violates the Texas Constitution and is void because Crear Jr. was not the owner of the property when he signed the loan documents. The Crears cannot prove the foreclosure sale was void or voidable, it should otherwise be set aside, or that the Crears have superior title from a common source.

Dkt. No. 83 at 22-23.

DB has carried its burden to prove these contentions through competent summary judgment evidence. First, as set out above, the Crears' defenses are barred by res judicata and not otherwise supported by competent evidence. And DB has shown that both the unilateral foreclosure recission and the home equity loan are invalid, and, so, neither can show that the Crears have superior title from a common source.

As DB explains,

"[t]he unilateral rescission document also runs afoul of the requirements for a conveyance of title. As detailed above, the rescission document purports to grant, sell, and convey the property back to Crear Sr. Section 5.021 of the Texas Property Code dictates a conveyance of title in real property must be in writing, signed by the grantor, and delivered to the grantee. The rescission document was never signed by Deutsche Bank or the substitute trustee. (rescission document, ex. B-4, app. 060.) A deed which is not signed by a grantor is void *ab initio* and cannot pass title. *See Sanchez v. Telles*, 960 S.W.2d 762, 768 (Tex. App. – El Paso 1997, writ denied).").

Dkt. No. 83 at 27. And,

[b]ecause the rescission document is void as a matter of law and did not pass title back to Crear Sr., Crear Sr. did not have any title to give Crear Jr. *Centerpoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 432 (Tex. App. – Houston [1st Dist.] 2005, pet. denied) ("It is well established under Texas law that a party cannot convey to another a greater interest in a property than it possesses."); *Watson v. Tipton*, 274 S.W.3d 791, 799 (Tex. App. – Fort Worth 2008, pet. denied) ("A deed does not convey title when no title rests in the grantor.") The Crears also admit when Crear Sr. executed the general warranty deed he had no right, title, or interest in the property, the general warranty deed failed to convey Crear Jr. any right, title, or interest in the property, Crear Jr. did not own the property when he executed the home equity loan, and the home equity loan was not signed by the owner(s) of the property. (disc reqs. at RFA 10, ex. B-1, app. 032; disc reqs. at RFA 7, 8, 11, 12, ex. B-2, app. 046.).

*Id.* at 28 (cleaned up). Similarly, Crear, Jr. could not encumber the Property with a home equity loan. *See id.* at 29 ("When Crear Jr. secured and signed the home equity loan from FNBT, he did not have the right to possess, use, and convey the property due to Deutsche Bank's valid foreclosure sale. Crear Jr. did not have title [to] the property to encumber through the home equity loan. Nor did Deutsche Bank, the owner of the property, provide written consent to the home equity loan. Given this, the home equity lien violates the Texas Constitution rendering it void." (citations omitted)).

- 24 -

In sum, DB has established a prima facie case of legal title to the Property. And no defendant has carried the burden to rebut this showing through competent summary judgment evidence establishing either superior title or that the true title is outstanding. The Court should therefore grant DB summary judgment on its claim of trespass to try title.

"[A] suit to quiet title is an equitable action intended to remove a cloud of title on property." *Richardson*, 873 F. Supp. 2d at 816 (citations omitted).

"Title to property is 'clouded' when a party has an invalid claim to the property that serves to diminish the property's value." *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 560 (N.D. Tex. 2021) (quoting *Carter v. Bank of Am., N.A.*, No. 3:12-cv-4550-B, 2013 WL 1482610, at *2 (N.D. Tex. Apr. 9, 2013)).

"In order to quiet title, a plaintiff must demonstrate: (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Id.* (citations omitted).

And, "to prevail on a quiet title claim, Plaintiffs must prove and recover on the strength of their own title, not on the weakness of their adversary's title." *Id.* (citing *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 590 (N.D. Tex. 2013)); *see also Warren v. Bank of Am., N.A.*, 566 F. App'x 379, 382 (5th Cir. 2014) (per curiam) ("[D]emonstrat[ing] … superior title … is essential in a quiet title claim.").

For substantially the same reasons underlying why DB has carried its burden to establish beyond peradventure the essential elements of its trespass-to-try-title claim, it has carried the same burden as to its quite title claim. As DB puts it, it

- 25 -

> purchased the property at a valid foreclose sale on April 2, 2019. (substitute trustee's deed, ex. A-2, app. 015; March 15, 2019 mortgage statement, ex. A-3, app. 018.) Deutsche Bank's title to the property is affected by the claims of Crear Sr., Crear Jr., and FNBT due to the rescission, general warranty deed, and home equity loan. As detailed above, any challenge to Deutsche Bank's foreclose sale is barred by [at least] res judicata, the rescission is void as a matter of law, the general warranty deed is void as a matter of law, and the home equity lien is void because it violates the Texas Constitution.

Dkt. No. 83 at 30.

## B. The Court should deny DB summary judgment on its Texas statutory claims.

DB also moves for summary judgment on its claims that Crear Sr.'s fraudulent recission violated Section 12.002 of the Texas Civil Practice and Remedies Code ("TCPRC") and that Crear Sr.'s recording a forged financing statement violated Section 9.5185(a) of the TCPRC.

> A claim under Section 12.002(a) has three elements:
> [T]he defendant (1) made, presented, or used a document with knowledge that it was a "fraudulent lien or claim against real or personal property or an interest in real or personal property," (2) intended that the document be given legal effect, and (3) intended to cause the plaintiff physical injury, financial injury, or mental anguish.

*Golden v. Wells Fargo Bank, N.A.*, 557 F. App'x 323, 326-27 (5th Cir. 2014) (per curiam) (quoting *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 964 (Tex. App. – Dallas 2013, no pet.) (quoting TEX. CIV. PRAC. & REM. CODE § 12.002(a))).

DB is required to establish each element beyond doubt and show that it is entitled to summary judgment as a matter of law.

And the undersigned cannot find that it has done so where DB has not shown, as a matter of law, that Crear Sr.'s recission created a lien or claim against real

property. *Cf.* TEX. CIV. PRAC. & REM. CODE § 12.001(3) ("'Lien' means a claim in property for the payment of a debt and includes a security interest.").

As the Fifth Circuit has observed (but has not resolved),

> [s]ome courts have held that Section 12.002 requires the plaintiff to plead facts showing the defendant used an instrument purporting to create a fraudulent lien. *See, e.g.*, *Marsh v. JPMorgan Chase Bank, Nat'l Ass'n*, 888 F.Supp.2d 805, 811-14 (W.D. Tex. 2012); *Jaimes v. Fed. Nat'l Mortg. Ass'n*, 930 F. Supp. 2d 692, 697 (W.D. Tex. 2013). But courts are not uniform in their application of Section 12.002, and some do not require creation of a lien. *See, e.g.*, *Bernard v. Bank of Am., Nat'l Ass'n*, No. 04-12-00088-CV, 2013 WL 441749, at *4 (Tex. App. – San Antonio Feb. 6, 2013, no pet.); *Venegas v. U.S. Bank Nat'l Ass'n*, No. SA-12-CV-1123, 2013 WL 1948118, at *7 (W.D. Tex. May 9, 2013); *Kingman Holdings, LLC v. CitiMortgage, Inc.*, No. 4:10-CV-619, 2011 WL 1883829, *5-6 (E.D. Tex. Apr. 21, 2011). [So i]t is best to affirm for the reasons stated and avoid weighing in on the split of authority in interpreting this state statute.

*Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 783 n.11 (5th Cir. 2015); *see also Golden*, 557 F. App'x at 327 n.2 ("A majority of federal district courts have held that a document assigning a deed of trust does not qualify as a 'lien or claim' under Section 12.002." (citing *Perdomo v. Fed. Nat'l Mortg. Ass'n*, No. 3:11-cv-734-M, 2013 WL 1123629, at *5 (N.D. Tex. Mar. 18, 2013))).

Turning to the claim under Section 9.5185(a), the fifth claim of the operative complaint, *see* Dkt. No. 17 at 11-12, DB pleads this claim as violating the TCPRC and moves for summary judgment accordingly.

But the applicable law and language appear instead in the Texas Business and Commerce Code. *See* TEX. BUS. & COM. CODE § 9.5185.

This may be an unintended typographical error. But it still means that DB is moving for summary judgment on a claim that it has not pleaded, which also means

that DB has not shown beyond doubt that it is entitled to summary judgment on this claim as a matter of law. *See, e.g.*, *Williams v. Hous. Plants & Garden World, Inc.*, 508 B.R. 19, 31 (S.D. Tex. 2014) ("Williams also moves for partial summary judgment on claims under Tex. Civ. Prac. & Rem. Code § 12.002 and Tex. Bus. & Com. Code § 9.5185, but "[n]either claim is included in his second amended complaint," so "Williams's motion for partial summary judgment on these claims is denied." (citations omitted)).

### C.   The Court should grant in part and deny in part DB's requests for a declaratory judgment and a permanent injunction.

While DB has pleaded a claim for declaratory judgment, *see* Dkt. No. 17 at 12-13, "[i]n a declaratory judgment action, the parties litigate the underlying claim, and the declaratory judgment is merely a form of relief that the court may grant," *Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 400-01 (5th Cir. 2011) (per curiam) (citing *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990)).

The federal Declaratory Judgment Act ("DJA") states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "Since its inception, the [DJA] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). And, so, federal courts have broad discretion to grant or refuse declaratory judgment. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991).

And "[c]ourts have declined to exercise their discretion to decide declaratory judgment actions where deciding that action would be redundant in light of the affirmative causes of action before the Court." *Ecoquij-Tzep v. Le Arlington*, No. 3:16-cv-625-BN, 2018 WL 11443416, at *3 (N.D. Tex. Feb. 12, 2018) (collecting cases).

> A declaratory judgment action is redundant for this reason if resolution of the affirmative claims and counter-claims before the Court would resolve all questions that the declaratory judgment action raises. In making this determination, the Court should consider potential qualitative differences between merely prevailing in the lawsuit, and receiving an affirmative declaration of rights to a declaratory judgment.

*Id.* (cleaned up).

But a declaratory judgment appears appropriate and not necessarily redundant here, as "[t]his type of relief is normally awarded to the prevailing party in a suit to quiet title." *Raggio*, 2025 WL 2946610, at *7 (citing *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App. – Houston [1st Dist.] 2012, pet. denied) ("The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title.")).

And, so, in its direction and only consistent with the findings and conclusions set out above, the Court should grant DB a declaratory judgment that declares that:

- Deutsche Bank is the owner of the property free and clear of any claims from defendants;

- Crear Sr.'s rescission of Deutsche Bank's foreclosure sale and substitute trustee's deed is void *ab initio*;

- Crear Sr.'s general warranty deed to his son Crear Jr. is invalid as a matter of law because the recission is void;

- Because Crear Jr. did not have any title to the property, FNBT's lien is void as a matter of law;

- Deutsche Bank is entitled to an order of possession;

- Defendants have no right, title, or interest in the property; and

- Deutsche Bank is entitled to injunctive relief against the Crears.

Finally, DB seeks to permanently enjoin the Crears "from filing any claim regarding the property without first obtaining leave and approval of this court," to prevent their "further alienation or hypothecation of Deutsche Bank's title to the property and further fraudulent UCC filings against Deutsche Bank." Dkt. No. 83 at 41.

"The party seeking a permanent injunction must satisfy a four-part test: it must show (1) success on the merits; (2) the failure to grant the injunction will result in irreparable injury; (3) the injury outweighs any damage that the injunction will cause the opposing party; and (4) the injunction will not disserve the public interest." *United Motorcoach Ass'n, Inc. v. City of Austin*, 851 F.3d 489, 492-93 (5th Cir. 2017).

DB has satisfied this test for the reasons set out above. And the permanent injunction it seeks is consistent with the scope of relief that the undersigned recommends be granted.

And, so, the Court should permanently enjoin the Crears from filing any claims regarding the Property without first obtaining leave of the Court.

### Recommendation

The Court should grant in part and deny in part Plaintiff Deutsche Bank

National Trust Company's motion for summary judgment [Dkt. No. 82], deny the motions for summary judgment filed by Defendants Steven Crear, Sr. and Steven Crear, Jr. [Dkt. Nos. 69 & 86], and enter a final judgment granting Deutsche Bank's claims for trespass to try title and quite title and awarding declaratory relief and a permanent injunction consistent with those claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 14, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE